# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRAD LIEBERMAN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 6187 |
| | ) | |
| GREGORY SCOTT, Program Director, | ) | |
| Rushville Treatment and Detention | ) | |
| Facility, Illinois Department of Human | ) | |
| Services, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Brad Lieberman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Lieberman's habeas petition and declines to certify any issues for appeal under 28 U.S.C. § 2253(c)(2).

## BACKGROUND

When considering habeas petitions, federal courts must presume the factual findings made by the last state court to decide the case on the merits are correct unless the habeas petitioner rebuts those findings by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). Where Lieberman has not provided clear and convincing evidence to rebut this presumption, the following factual background is based on the Illinois Appellate Court's findings in *In Detention of Brad Lieberman*, No. 1-14-1360, 2015 IL App (1st) 141360-U (1st Dist. June 26, 2015) (unpublished), *appeal denied*, 42 N.E.3d 370 (Ill. 2015).

## I.    Introduction

Lieberman is civilly committed to the custody of Respondent Gregory Scott, Program Director of the Rushville Treatment and Detention Center, in Rushville, Illinois.  On February 6, 2006, a jury in the Circuit Court of Cook County found that Lieberman was a sexually violent person ("SVP") pursuant to Illinois' Sexually Violent Persons Commitment Act ("SVPCA"), 725 ILCS 207/1, *et seq.*  Thereafter, a Circuit Court judge ordered Lieberman committed to the Illinois Department of Human Services ("DHS").  Since his commitment, Lieberman has periodically and unsuccessfully petitioned for discharge or conditional release and the Court presumes familiarity with these earlier challenges.[1]  Lieberman's challenges are based on the SVPCA's required yearly report that determines "whether the person has made sufficient progress to be conditionally released or discharged."  725 ILCS 207/55(a).

The present § 2254(d) habeas petition challenges the state court proceedings resulting from Lieberman's 2011 and 2012 reexaminations.  Construing his pro se habeas pleadings liberally, *see Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 569 (7th Cir. 2017), Lieberman argues that the Illinois courts erred when granting the State's 2011 and 2012 motions for findings of no probable cause and denying his corresponding 2012 and 2013 petitions for discharge or conditional release.  More specifically, Lieberman contends:

> (1) The Illinois courts violated his due process rights by ignoring newly-administered psychological tests that established he is not a SVP and does not have a mental disorder;
>
> (2) The Illinois Appellate Court impermissibly relied upon a non-statutory statistical likelihood of recidivism as proof of his mental disorder; and

---

[1]    *See, e.g.*, *Lieberman v. Scott*, No. 13 C 8599, 2014 WL 2832834 (N.D. Ill. June 23, 2014); *In re. Det. of Stanbridge*, 980 N.E.2d 598 (Ill. 2012); *In re Det. of Lieberman*, 962 N.E.2d 482 (Ill. 2011); *In re Det. of Lieberman*, 943 N.E.2d 1100 (Ill. 2011); *In re Det. of Lieberman*, 955 N.E.2d 118 (1st Dist. 2011); *In re Det. of Lieberman*, No. 1-09-2162, 2011 WL 9699478 (1st Dist. 2011); *In re Det. of Lieberman*, 935 N.E.2d 515 (Ill. 2010).

(3) The Illinois courts improperly relied upon Dr. Kimberly Weitl's expert conclusion that he currently suffers from a mental disorder and is a SVP.

## II.    Relevant Proceedings

In November 2011, the State filed a motion for a finding of no probable cause to warrant an evidentiary hearing on the issue of whether Lieberman is currently a sexually violent person in need of treatment on a secure basis. In support of its motion, the State included an October 2011 report prepared by Dr. Weitl. In her report, Dr. Weitl indicated that Lieberman refused to participate in an interview with her and that he has not participated in any sex offender treatment programs while at Rushville. She further stated that she prepared her report based on the record from Lieberman's criminal trial, his master treatment plan, progress notes, Illinois Department of Corrections disciplinary reports, prior examinations, the Static–99 actuarial instrument, the Minnesota Sex Offender Screening Tool–Revised (MnSOST–R), and peer consultation. Based on the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM–IV–TR), Dr. Weitl diagnosed Lieberman with paraphilia, not otherwise specified, nonconsenting females (paraphilia NOS), and antisocial personality disorder. Specifically, Dr. Weitl concluded:

> As a result of Mr. Lieberman's mental disorder(s), it is substantially probable that (he) will engage in acts of sexual violence. He scored in the [h]ighest risk categories on two actuarial instruments and has several additional empirically based risk factors. Age may serve as a protective factor, but does not decrease his risk below that of substantially probable.

*In re Det. of Lieberman,* 2015 WL 3939872, at *2.

Lieberman filed a response to the State's motion arguing that (1) Dr. Weitl's diagnosis of paraphilia NOS does not exist in the DSM; and (2) Dr. Weitl did not conduct a personal examination of him and that her conclusions are based on his prior crimes from 1979 and 1980.

3

In February 2012, Lieberman filed a petition for discharge or conditional release asserting that he is not a sexually violent person under the SVPCA, that he is not in need of commitment, and that it is not substantially probable that he will engage in acts of sexual violence if discharged or conditionally released. Further, Lieberman filed a motion to appoint Dr. Craig Rypma for his yearly petition for discharge. In March 2012, the Circuit Court granted the State's motion for a finding of no probable cause, granted Lieberman's motion to appoint Dr. Rypma, and continued the matter.

In his March 2012 memorandum supporting his petition for discharge, Lieberman included a declaration from Dr. Allen Frances. Dr. Frances averred that he was a member of the DSM-IV task force that prepared the official manual used to guide psychiatric diagnoses. In discussing paraphilia NOS, Dr. Frances explained that the task force "never anticipated that [the] opening sentence of the section would be considered a forensic definition of Paraphilia or be used in determining the suitability of long term psychiatric incarceration in SVP cases." *In re Det. of Lieberman,* 2015 WL 3939872, at *2. Dr. Frances disagreed with Dr. Weitl's diagnosis and agreed with an expert in Lieberman's prior SVPCA proceedings in "finding no evidence to support a diagnosis of paraphilia." *Id.* Dr. Frances also agreed with this prior expert's "characterization of 'Paraphilia NOS sexually attracted to nonconsenting females' as made up, non-official, and scientifically unsupported." *Id.*

In September 2012, Dr. Rypma filed an annual independent progress review with the court explaining:

> Mr. Lieberman does not qualify for a diagnosis of a paraphilia. In order for an individual to qualify for the diagnosis of a paraphilia, there must be evidence of recurrent, intense, sexually arousing fantasies, sexual urges, or behaviors generally involving nonhuman objects, suffering or humiliation of oneself or one's partner, children, or other non-consenting persons. There is not sufficient

> evidence in this record to justify this diagnosis.  He has not demonstrated an
> ongoing, let alone intense urge for engaging in assaultive sexual activity.

*Id.*  In addition, Dr. Rypma observed that there is a conflict within the psychiatric community

about the validity of a paraphilia NOS diagnosis for the purpose of civil commitment.  More

specifically, he explained that "[t]his practice risks inaccurately conveying to the [c]ourt that an

examinee suffers from a sexual disorder, when indeed their sexual crimes have been secondary

to a more primary disorder, not contemplated by the civil commitment laws." *Id.* at 3.  Further,

Dr. Rypma concluded that Lieberman did not qualify for a diagnosis of antisocial personality

disorder.  His report also included results from several psychological tests, including the Static–

99R, which is an actuarial instrument used to assess the risk of recidivism.  This version of the

instrument included reductions in the risk based on the offender's age.  Lieberman received a

score of 7, which placed him in the "high range, relative to other sex offenders." *Id.*  The other

tests Dr. Rypma administered included the Psychopathy Checklist–Revised (PCL–R) rating

scale, the SILS intelligent screening instrument, the MCSDS test, the Barratt Impulsiveness

Scale, the Iowa Gambling Test, the Personality Assessment Inventory, and the Millon Clinical

Multiaxial Inventory III.

In October 2012, Dr. Rypma submitted a supplemental report addressing changes to the

SVPCA.  In this report, he considered whether the SVPCA required the court to find that

Lieberman "has substantially changed as the result of treatment."  Dr. Rypma observed that

studies indicate more research on this topic is needed:

> While Mr. Lieberman has certainly not chosen to participate in the formal
> treatment program at Rushville, this evaluator is unable to conclude that the has
> not achieved "Substantial Progress" in the environment in which he has lived over
> the past six years of his confinement.

*In re Det. of Lieberman,* 2015 WL 3939872, at *4.

In October 2012, the State filed a motion for a finding of no probable cause based on Dr. Weitl's annual reexamination report. Again, Lieberman refused to participate in an interview with Dr. Weitl. Accordingly, Dr. Weitl prepared her 2012 reexamination report based on the same materials as the 2011 report, along with Dr. Rypma's report and a brief interaction with Lieberman. She then concluded that Lieberman continued to suffer from paraphilia NOS and antisocial personality disorder. Moreover, Dr. Weitl concluded that Lieberman's mental disorders make it substantially probable that he will reoffend basing her conclusion on the Static–99. Dr. Weitl noted that she did not use the Static–99R version like Dr. Rypma because while that version was recommended for use beginning in 2009, the data used to develop this revised version was not available until August 2011. Dr. Weitl explained that the Static–99R "has yet to be published or peer reviewed and there appears to remain some controversial issues surrounding the heavily weighted age item." *In re Det. of Lieberman,* 2015 WL 3939872, at *4. Lieberman scored a 7 on the Static–99 indicating he was high risk. Dr. Weitl also used the MnSOST–R instrument, which is intended to identify predatory and violent sexual offenders. Lieberman scored in the highest risk category for sexual re-offense. In her report, Dr. Weitl noted that she had accounted for reductions in risk based on Lieberman's age. She recommended that Lieberman continue to be found a sexually violent person under the SVPCA and that he should remain committed to the DHS for further secure care and sexual offense specific treatment.

Moreover, at her 2013 deposition, Dr. Weitl testified that Lieberman's mental disorders, namely, paraphilia NOS and antisocial personality disorder, predispose him to engage in acts of sexual violence. She testified that her opinion was based on his actions in committing the sexual assaults in 1979 and 1980. When asked if anything since then adds to her conclusion that

Lieberman lacks volitional control, she stated that "in the definition of paraphilias they're considered chronic, life-long disorders that don't go away. So it's inferred that those disorders don't go away, that he still has that predisposition." *In re Det. of Lieberman,* 2015 WL 3939872, at *5. Dr. Weitl also testified that her opinion was not affected by Dr. Rypma's opposite conclusions. In addition, Dr. Weitl explained that she accounted for Lieberman's age in the actuarial testing she used in reaching her conclusions.

At his 2013 deposition, Dr. Rypma testified that Lieberman never suffered from a paraphilia even when committing the 1979 and 1980 sexual assaults. Further, Dr. Rypma stated:

> Q: Are you saying that [Lieberman] no longer suffers from a paraphilia, or are you saying that he never did suffer from a paraphilia?
>
> A: I find from my review of the records that Bradley Lieberman was never suffering from a paraphilia. I am aware, however, that the Court has found otherwise. I believe what I tried to say is that if he did at one time it's not apparent now.
>
> Q: Okay. Now, to find out if he ever did suffer from a paraphilia, does it help to know why he offended?
>
> A: Yes.
>
> Q: Why is that?
>
> A: I believe that he was dealing with some anger issues that dealt with his family of origin. He grew up in a family that is described throughout the record as well as by himself, as well as by interviews that I conducted to be a very close family situation.
>
> His parents were divorced. There was some indication in the record as I recall sitting here right now that he had recently left his mother's house and was living with his dad at the time of the offense.
>
> As I thought through the issue of paraphilia versus general criminal conduct, I believe that that was what was going on. I do not believe that he was suffering from a disorder of sexual arousal as I understand the diagnostic requirements.

*In re Det. of Lieberman,* 2015 WL 3939872, at *6. When asked why Lieberman committed the 1979 and 1980 offenses, Dr. Rypma stated that "he was young, he was irresponsible, he was impulsive, he was 20 years old. He was–felt as many 20–year–olds I've come across feel, more powerful than they really are. He was an irresponsible kid." *Id.* In September 2013, Lieberman filed another petition for discharge relying on Dr. Rypma's report that he no longer suffers from a paraphilia.

The Circuit Court conducted a hearing in March 2014 on the pending motions, namely, the State's 2011 and 2012 motions for no probable cause, as well as Lieberman's February 2012 and September 2013 petitions for discharge. At the hearing, the court granted both motions for a finding of no probable cause and denied Lieberman's petitions for discharge as follows:

> The issue is is there a plausible account of changed circumstances such that he is no longer, has the mental disorder towards no longer likely to perform acts of sexual violence.

> The opinions of the people that were submitted, Dr. Rypma, indicate that, and these are issues that were heard and rejected by the jury, rape is not a paraphilia, rejected by the jury; didn't rape anyone in the penitentiary, therefore he's okay, rejected by the jury.

> These tests that—the Impulsiveness Scale, Iowa Test, those were not heard by the jury granted, but they don't—on their own they don't go not [sic] future dangers sufficiently to that there are any changed circumstances.

> Rypma is saying I don't believe he has this thing because I don't believe it exists. And that was rejected by the jury, it's also been rejected by the Supreme Court I might add on this very case. It's—I don't see a sufficient change in circumstances that indicate that he no longer has this mental disorder quite frankly.

*In re Det. of Lieberman,* 2015 WL 3939872, at *6-7. Lieberman appealed.

On appeal, Lieberman, by counsel, argued that: (1) the Circuit Court erred in denying his SVPCA petitions for discharge because he established probable cause by providing a plausible account that he is no longer a sexually violent person and that the court erred in failing to

properly apply the Supreme Court of Illinois' decisions in *In re Detention of Stanbridge* and *In re Detention of Hardin*; and (2) Dr. Weitl did not evaluate his current mental state, but rather based her assessment solely on his past criminal conduct. On June 26, 2015, the Illinois Appellate Court affirmed the Circuit Court concluding that Lieberman failed to present a plausible account that he was no longer a sexually violent person. The appellate court also rejected Lieberman's argument that Dr. Weitl's assessment was solely based on his past criminal conduct as belied by the record.

Lieberman, by counsel, then filed a timely petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing that: (1) the Illinois Appellate Court erred in applying *In re Det. Stanbridge* when it held that Dr. Rypma's evaluation and the new evidence based on never-performed psychometric tests failed to establish a plausible account that he no longer suffers from a mental disorder; (2) the Illinois Appellate Court committed reversible error when it relied solely on the statistical probability that he will recidivate to justify his continued confinement regardless of his mental health; and (3) the Illinois courts impermissibly engaged in credibility determinations regarding Dr. Rympa's testimony in violation of *In re Det. Hardin*. The Supreme Court of Illinois denied Lieberman's PLA on November 25, 2015.

## LEGAL STANDARDS

### I.     Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Pinno v. Wachtendorf*, 845 F.3d 328, 331 (7th Cir. 2017). The Supreme Court has explained that a state court's decision is "contrary

to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405. Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See id.* at 407.

## II.    Exhaustion and Procedural Default

"A federal habeas corpus petitioner is required to exhaust his available state remedies before seeking federal relief." *Lisle v. Pierce,* 832 F.3d 778, 785 (7th Cir. 2016) (citing 28 U.S.C. § 2254(b)(1)(A)). "Inherent in the habeas petitioner's obligation to exhaust his state court remedies before seeking relief in habeas corpus, is the duty to fairly present his federal claims to the state courts." *King v. Pfister,* 834 F.3d 808, 815 (7th Cir. 2016) (citation omitted). More specifically, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Tabb v. Christianson*, 855 F.3d 757, 765 (7th Cir. 2017). If a habeas petitioner fails to fully and fairly present his federal claims through one full round of state court review, he has procedurally defaulted his claims. *Tabb,* 855 F.3d at 765. Procedural default precludes federal habeas courts from reviewing the merits of a petitioner's habeas claims. *Thomas v. Williams,* 822 F.3d 378, 384 (7th Cir. 2016).

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would

result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Johnson v. Foster,* 786 F.3d 501, 505 (7th Cir. 2015). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

### I. Substantive Due Process Claim

In his first habeas claim, Lieberman asserts that the Illinois courts violated his substantive due process rights by ignoring newly-administered psychological tests that established he is not a SVP and does not have a mental disorder. Construing his pro se filings liberally, *see Grant*, 870 F.3d at 569, Lieberman bases his substantive due process claim on his civil confinement being "a massive curtailment of liberty[.]" *Vitek v. Jones,* 445 U.S. 480, 491 (1980); *see also Addington v. Texas,* 441 U.S. 418, 425 (1979) ("civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection"); *In re Det. of New,* 992 N.E.2d 519, 521 (1st Dist. 2013) ("Essentially, the respondent's liberty is tied to an assessment of the mental disorder and the risk of future sexual offenses."). Part of Lieberman's second habeas claim also falls under the due process clause as explained in *Kansas v. Hendricks,* 521 U.S. 346, 368-69 (1997). *See Hughes v. Dimas*, 837 F.3d 807, 808 (7th Cir. 2016) ("the Supreme Court

understands the Fourteenth Amendment to require that civil detainees receive treatment for the disorders that led to their confinement and be released when they've improved enough no longer to be dangerous"). Respondent, however, argues that Lieberman has procedurally defaulted his due process claim because he did not raise it through one complete round of Illinois appellate review before presenting this claim in his habeas petition. *See Hicks v. Hepp,* 871 F.3d 513, 530 (7th Cir. 2017). The Court agrees.

On appeal, Lieberman, by counsel, argued that the Circuit Court did not adhere to the Supreme Court of Illinois' decisions in *In re Detention of Stanbridge* and *In re Detention of Hardin* because the court failed to consider the new evidence presented by Dr. Rypma and improperly accepted Dr. Weitl's 2011 and 2012 reports as sufficient. (R. 8-11, 12/01/14 Corrected Opening Brief, at 12-13.) Lieberman also argued that he was being civilly detained based on his past conduct and not his current mental state. (*Id.* at 17-19.) At no point in his opening or reply legal memoranda on direct appeal did Lieberman argue that the Circuit Court violated his due process rights. Lieberman, however, mentions his due process rights in his September 4, 2015 PLA to the Supreme Court of Illinois. Nonetheless, he has procedurally defaulted his due process claim for failing to raise it to the Illinois Appellate Court. *See Brown v. Brown,* 847 F.3d 502, 517 (7th Cir. 2017) ("A federal court will not hear a state prisoner's habeas claim unless the prisoner has first presented it to the state courts for one full round of review").

To overcome his procedural default, Lieberman relies upon the fundamental miscarriage of justice exception, also known as the actual innocence exception. (R. 17, Reply, at 19.) Although the Seventh Circuit has concluded that the fundamental miscarriage of justice exception applies to civil commitment cases, *see Schmidt v. McCulloch,* 823 F.3d 1135, 1137

(7th Cir. 2016), the Seventh Circuit has also explained that the "correct application of the actual innocence exception to civil commitment cases is a difficult one." *Brown v. Watters,* 599 F.3d 602, 610 (7th Cir. 2010). In any event, "[t]o pass through the actual-innocence gateway to a merits review of a procedurally barred claim, the petitioner must have 'new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial,' and must persuade the district court that it is 'more likely than not that no reasonable juror would have convicted him in light of the new evidence[.]'" *Jones v. Calloway,* 842 F.3d 454, 461 (7th Cir. 2016) (citations omitted). In support of his actual innocence claim, Lieberman points to Dr. Weitl's 2013 reexamination report that was not part of the underlying state court proceedings forming the basis of his present habeas petition. *See In re Det. of Lieberman*, 80 N.E.3d 649, 652 (1st Dist. 2017), *appeal denied*, No. 122443, 2017 WL 4386869 (Ill. Sept. 27, 2017). In other words, Lieberman does not present evidence of his actual innocence, but challenges findings made in relation to his 2014 discharge proceedings based on his 2013 annual reexamination that are the subject of a separate state court appeal. Therefore, his procedurally defaulted due process claim is not excepted by his alleged actual innocence, and thus the Court is barred from considering the merits of this claim. *See Crockett v. Butler*, 807 F.3d 160, 166 (7th Cir. 2015).

## II.     Non-Cognizable Claims

Lieberman also argues that the Illinois Appellate Court impermissibly relied on a non-statutory "made up" statistical likelihood of recidivism as proof of his mental disorder. Viewing this claim as a challenge to the Illinois courts' application of the SVPCA, any such claim is not cognizable on habeas review because "[f]ederal habeas corpus relief is not available to correct perceived errors of state law." *Crockett,* 807 F.3d at 168. In other words, "it is only

noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts[.]" *Wilson v. Corcoran,* 562 U.S. 1, 5, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) (emphasis in original). Likewise, Lieberman asserts that the Illinois courts improperly relied on Dr. Weitl's contradictory testimony and that the courts' conclusions were inconsistent with *In re Commitment of Gavin,* 14 N.E.3d 1163, 1185 (1st Dist. 2014). Again, Lieberman's claims concern questions of state law not cognizable on habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("habeas corpus relief does not lie for errors of state law."). Simply put, "[i]t is well-established that on habeas review, a federal court cannot disagree with a state court's resolution of an issue of state law." *King v. Pfister,* 834 F.3d 808, 814 (7th Cir. 2016).

That being said, Lieberman also argues that "[a]ll claims raised in this petition demonstrate Illinois' departure from constitutional limits imposed by SCOTUS in *Kansas v. Hendricks,* 521 U.S. 346 (1997) and its progeny." (R. 1, Habeas Petition, at 5.) From the record, it appears Lieberman is arguing that the Illinois Appellate Court solely relied upon his statistical likelihood of re-offense as the basis for his continued confinement in violation of the *Hendricks* Court's admonishment that a "finding of dangerousness, standing alone, is ordinarily not a sufficient ground upon which to justify indefinite involuntary commitment." (*See* Ex. N., 9/4/15 PLA, at 16.). Based on *Hendricks*, Lieberman takes issue with the Illinois Appellate Court's failure to find him both mentally ill and dangerous. *See Foucha v. Louisiana,* 504 U.S. 71, 77 (1992); *Varner v. Monohan,* 460 F.3d 861, 864 (7th Cir. 2006) ("The Supreme Court has told us that civil commitment of persons with both mental defects and dangerous proclivities comport with the Constitution").

Not only is this argument procedurally defaulted, but it is factually baseless. To clarify, the Illinois Appellate Court determined that Lieberman had mental disorders, namely, paraphilia NOS and antisocial personality disorder *and* that he was likely to reoffend based on evidence in the record, including both Dr. Rympa's and Dr. Weitl's deposition testimony. As such, the Court denies this aspect of Lieberman's habeas petition.

### III.    Evidentiary Hearing under 28 U.S.C. § 2254(e)(2)

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 181 (2001)). Moreover, under § 2254(e)(2), federal courts do not hold evidentiary hearings in habeas cases except in limited circumstances – none of which apply here. *See Avila v. Richardson,* 751 F.3d 534, 537 (7th Cir. 2014) ("AEDPA forecloses federal-court fact-finding, except in certain unusual circumstances not present here"). Accordingly, the Court will not conduct an evidentiary hearing in this matter.

### IV.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Lieberman a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present ruling. A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, rather, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Flores-Ramirez v. Foster,* 811 F.3d 861, 865 (7th Cir. 2016). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right.

*See Miller-El,* 537 U.S. at 336; 28 U.S.C. § 2253(c)(2).  Under this standard, Lieberman must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).  Similarly, in cases where a district court denies a habeas claim on procedural grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and (2) jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack,* 529 U.S. at 485.

Here, Lieberman has not established that reasonable jurists would debate the Court's procedural ruling concerning his due process challenges nor that certain claims are not cognizable on habeas review.  Moreover, Lieberman has not established that jurists of reason would debate the Court's merits determinations.  Therefore, the Court declines to certify any issues for appeal.  *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Lieberman's petition for a writ of habeas corpus and declines to certify any issues for appeal.  *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:**  November 6, 2017

ENTERED

AMY J. ST. EVE
**United States District Judge**